Leonard W. Aragon (020977)
E. Tory Beardsley (031926)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
leonard@hbsslaw.com
toryb@hbsslaw.com

Katherine M. Aizpuru*
Gemma Seidita*
David Lawler*
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Ave. NW
Suite 1010
Washington, D.C. 20006
Tel. 202-973-0900
Fax: 202-973-0950
kaizpuru@tzlegal.com
gseidita@tzlegal.com
dlawler@tzlegal.com

*Attorneys for Plaintiff*

*\*Pro hac vice applications forthcoming*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Jeffrey Kazmucha, on behalf of himself and all others similarly situated, | **CLASS ACTION COMPLAINT** |
|     *Plaintiff,* <br> v. | **DEMAND FOR JURY TRIAL** |
| Fitness Alliance, LLC, and Eos Fitness Opco Holdings, LLC, | |
|     *Defendants.* | |

Plaintiff Jeffrey Kazmucha ("Plaintiff"), individually and on behalf of all others similarly situated, by and through counsel, hereby brings this action against Fitness Alliance, LLC, and Eos Fitness Opco Holdings, LLC (collectively, "Defendants" or "EoS"). Plaintiff's allegations herein are based upon personal knowledge as to the facts specific to him, and upon information and believe and the investigation of counsel as to all other matters.

## NATURE OF THE CASE

1.     EoS is a franchise gym business that markets three tiers of memberships—each at a different price. EoS tells consumers that its least expensive membership tier provides access only to basic gym facilities, while the more expensive tiers offer exclusive access to amenities and equipment that are not included in the less expensive options.

2.     Plaintiff Jeffrey Kazmucha believed EoS's representations that he could only access premium amenities and equipment if he paid for a more expensive membership tier, so when he decided to join EoS, he purchased the most expensive option. After paying for his membership, however, Mr. Kazmucha realized that most of the supposedly restricted amenities and equipment were available to all members regardless of membership tier. Contrary to its promises, EoS's higher-tier, more expensive membership fees were a naked cash grab offering no additional benefits to members who selected them.

3.     EoS brands itself as a "High Value-Low Price" gym and operates in the "High Volume-Low Price" fitness segment. Backed by private equity, EoS's business model is premised on selling as many memberships to as many people as possible, with the understanding that the vast majority of these members will not actually go to the gym.

2

4.    EoS uses its advertised membership tiers to lure as many consumers as possible to sign up for recurring automatic payments. To entice consumers to sign up for more expensive memberships, EoS promises that access to superior features and amenities justify higher tiered memberships with higher prices.

5.    But that promise is false because EoS does not enforce restrictions on access to premium equipment and amenities, so each tier offers access to the exact same features. EoS's representation that the more expensive tiers offer more and better benefits than the less expensive tiers are false, and the increased fees that members pay for higher-tier memberships offer no commensurate benefit.

6.    Those, like Plaintiff, who paid extra to have exclusive access to certain equipment and amenities are paying a worthless premium on their membership price.

7.    Plaintiff brings this lawsuit on behalf of himself and other EoS members to recover the inflated fees that they paid EoS for meaningless premium memberships.

## JURISDICTION AND VENUE

8.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). The amount in controversy exceeds the sum of $5,000,000 exclusive of interest and costs, there are more than 100 putative class members, and minimal diversity exists because many putative class members are citizens of a different state than Defendants. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because all claims alleged herein form part of the same case or controversy.

9.    This Court has personal jurisdiction over EoS, which conducts substantial business in this District and because a substantial portion of the events giving rise to the claims in this action occurred in this District.

10.    Venue is proper in this District under 28 U.S.C. §§ 1391(a)(2), 1391(b)(2), and 1391(c)(2) because substantial part of the events giving rise to the claims emanated from activities within this District, and EoS conducts substantial business in this District.

## PARTIES

11.    Plaintiff Jeffrey Kazmucha resides in Gilbert, Arizona.

12.    EoS is a franchise fitness business with a complex entity structure. EoS employs 2,120 persons and operates 125 or more gyms in Arizona, Florida, Nevada, California, Texas and Utah, with plans to expand into Georgia.

13.    Fitness Alliance, LLC is a limited liability company organized under the laws of Arizona, with a known place of business as 1 East Washington Street, Suite 500, Phoenix AZ 85004.

14.    Eos Fitness Opco Holdings, LLC is a limited liability company organized under the laws of Delaware with headquarters at 126 E 56th Street, New York, NY 10022.

## FACTUAL BACKGROUND

**A.    Background on the "High Value, Low Price" fitness industry**

15.    In the fitness world, "High Volume, Low Price" ("HVLP") refers to business models, like EoS', that offer relatively low membership prices to encourage a high volume of customers to purchase memberships.

16.    To be profitable, the price point needs to be so low that a consumer will not feel the need to cancel the membership even if they do not go to the gym that often. It likewise rests on the assumption that most people who buy memberships will not regularly go to the gym.

17.    HVLP business are most commonly fitness chains that can rely on economies of scale to reduce operational overhead costs.

18.     During the COVID-19 pandemic, 25% of all health and fitness facilities closed,[1] but HVLP chains emerged somewhat unscathed because of these economies of scale. HVLP gyms have since surged in popularity—while they generated $36.9 billion in 2022, that is expected to skyrocket to $51 billion in 2029.[2]

19.     While HVLP offers a lower entry price to gyms, it comes with tradeoffs implicit in keeping operational costs low, such as short staffing, decreased maintenance on equipment, and overcrowding of the fitness spaces, because of the high volume of members signed up at each location.

20.     One way that consumers who plan to frequently exercise at an HVLP gym can shield themselves from the negative impacts of the HVLP model is to buy higher tier memberships that provide exclusive access to certain amenities or spaces. For the gyms, the more-expensive membership tiers offset the loss in revenue that would occur if everyone only paid for the basic tier.

21.     For example, Planet Fitness—a competitor to EoS—noted that in 2022, over 60% of its members were at the elite "Black Card" membership tier that was priced at $24.99 per month, which allowed it to keep its base price at $10 per month from 1998 until 2024.[3]

---

[1] Sami Smith, *How Many Health Clubs, Gyms, and Studios Closed in 2021*, Health & Fitness Association (Jan. 28, 2022), https://perma.cc/TXF8-P6UK.

[2] *High-Value Low-Price (HVLP) Gyms Market Key Players, Demands, Trends, Size, Share, Growth Rate, Brand Share, Cost and Forecasts to 2029*, ReportsnReports (Oct. 18, 2023, 2:03 PM), https://perma.cc/V85A-SU6Z.

[3] Nathaniel Meyersohn, *Why Planet Fitness hasn't raised its $10 monthly gym price in 30 years*, CNN (Nov. 12, 2022, 5:01 AM), https://perma.cc/9UAY-JXWV;
Julie King, *The Price is Right*, Health & Fitness Association (Sep. 19, 2024), https://perma.cc/7BPL-8MGG.

22.     For companies promoting this business model, like EoS, the "HVLP" model is lipstick on a pig—promoting a supposed "High Value" while hiding the reality of a gym that permits an essentially unlimited number of members as part of its cost model.

**B.     Private equity firms promote and profit from the HVLP model**

23.     Private equity firms' interest in and involvement with fitness chains extends as far back as the early 2000s, when firms invested in, and acquired 24 Hour Fitness. Private equity activity in the fitness industry grew exponentially from the 2000s through the 2010s as revenues in the fitness industry skyrocketed.[4]

24.     Fitness companies are particularly well-suited for private equity acquisition, especially chains that are willing to, or already deploy a HVLP strategy. This is because HVLP fitness companies require physical locations and benefit from growth models that increase market share while drastically decreasing operational costs. Private equity firms can facilitate this by achieving lower facility build out costs through synergies, renegotiating vendor contracts, and using their funds to acquire competitor facilities.[5]

25.     Private equity firms benefit from the reliable revenue from subscription-based gyms and scalable growth models.[6]

26.     However, private equity firms are known for aggressively cutting operational costs in ways that impact a gym's members. This includes by reducing staffing levels and deferring (or even forgoing) maintenance on equipment.

---

[4] *See Equinox Fitness Clubs Receives Investment from L Catterton*, PRNewswire (Jul. 11, 2017), https://perma.cc/S5SL-KEYZ;
Bob Sander, *Planet Fitness' road to a public offering*, NH Business Review (July 9, 2015), https://perma.cc/ZL7G-TSGN.
[5] Ziad Razzak, *Private Equity in the Fitness Space*, Atwood Consulting, https://perma.cc/3M8C-H6B3 (last visited Apr. 11, 2025).
[6] The Currency Editors, *Private equity's plate is full: Subs, gyms and beyond*, The Currency (Dec. 13, 2024), https://perma.cc/E7Z4-7TJ5

27.    These problems are amplified when private equity backed HVLP gyms capture more and more of the market share through consolidation and roll ups, which is expected to increase in the coming years according to analysts.[7]

28.    One way that consumers can shield themselves from the negative impacts of private equity on the gym experience, such as understaffing of facilities, inadequate amenities, and subpar equipment maintenance, is to buy higher tier memberships that provide exclusive access to amenities (and therefore more likely to be monitored by staff and in repair due to less wear and tear).

**C.    EoS is Acquired by Private Equity Firms and Rapidly Expands**

29.    EoS was launched in 2014 in Phoenix, Arizona. Its name stands for stands for Energy, Optimum Value, and Serious Fitness. EoS's website states "when EoS was formed, no one told us how to run a business."[8]

30.    But times have changed. In February 2015, EoS was acquired by New York-based private equity firms Bruckmann, Roser, Sherill & Co. and Performance Equity Management to begin "a new growth phase."[9] Like other private-equity-backed gyms, EoS began to open as many locations as possible, as quickly as possible: at the time of EoS's acquisition, it had 16 locations open in three states;[10] five years later, EoS opened

---

[7] Josh Liberatore, *Consolidation Is Here To Stay in Fitness Franchising, Experts Say*, Athletech News (Dec. 17, 2024), https://perma.cc/AE4Z-HV3K.
Luca Piacentini, *The Role of Private Equity in Fitness Franchising: Consolidation and Strategic Shifts*, StacheCow (Jan. 13, 2025, 12:14 PM), https://perma.cc/35DJ-8CW5.
[8] EōS Fitness, About Us Page, https://perma.cc/BVX8-ZKQ6 (last visited Apr. 11, 2025).
[9] Iris Dorbian, *BRS and PEM buy gym club chain Eos Fitness*, PE Hub (Feb. 3, 2015), https://perma.cc/K85E-SMPX.
[10] *Id.*

its 40th location, and, despite the challenges of the COVID-19 pandemic, by 2023 it had more than doubled in size.[11]

31.    Consistent with the HVLP model, EoS's expansion included both rapidly opening new gyms and rapidly acquiring new members. In September 2023, despite having less than 125 gyms open, EoS announced that it welcomed its one-millionth member, and stated that as part of its growth plan, it aimed to open over 250 gyms by 2030.[12]

32.    This number of members, even accounting for members who may have cancelled memberships, compared to the number of facilities, is incredible and highlights how EoS's aggressive HVLP model was integral to its growth.

33.    Today, EoS has 175 locations in Arizona, California, Florida, Nevada, Utah, and Texas, with plans to expand to Georgia.[13]

**D.    EoS offers illusory membership tiers with no meaningful difference in benefits**

34.    EoS markets three membership tiers: Will Do, Will Crush, and Will Power.[14] EoS advertises its membership tiers in person at its gym locations and on its website. EoS's website displays a chart comparing the scope of gym access and amenities offered in each membership tier.

---

[11] *EoS Fitness Surpasses One Million Members, Continues Nationwide Expansion*, Businesswire (Sep. 19, 2023, 7:05 AM), https://perma.cc/ANU5-XJML; *EōS Fitness Acquires Texans Fit Gym Chain, Hits Milestone of 75 Open Gyms Nationwide*, EōS Fitness (Aug. 16, 2023), https://perma.cc/N899-M6S3.

[12] Courtney Rehfeldt, *EoS Fitness Tops 1 Million Members, Carves Aggressive Expansion Plan*, Athletech News (Sep. 19, 2023), https://perma.cc/LUA9-3M8R.

[13] EōS Fitness, EōS Gym Locations Page, https://perma.cc/B322-7RT3 (last visited Apr. 11, 2025).

[14] EōS Fitness, EōS Fitness Membership Page, https://perma.cc/6PXC-J3UK (last visited Apr. 11, 2025).

35. EoS uses substantially identical marketing materials to advertise its membership tiers, and its membership agreements are governed by standardized contracts.

36. Will Do is the most basic tier and costs $9.99 per month (plus a $59.99 Annual Membership Fee and monthly $2.99 Processing Fee). EoS describes this membership as follows: "No frills? No problem. Our Will Do Membership gives you all the essentials at one unbeatably low monthly price. Build yourself up with what matters most." Will Do members only have access to a single EoS location, and access to the following amenities:

- Complimentary Personal Training Session;
- Access to Cardio & Strength Equipment;
- Open 24 Hours a Day;
- Month-to-Month (membership).

37. The Will Do membership is cheap enough to entice large numbers of consumers to sign up for a membership with EoS—consistent with the private-equity backed HVLP membership model described above.

38. However, it is so cheap that, if all EoS's members paid only the Will Do membership price, EoS could likely not afford to stay in business. To cover the gap, EoS also advertises two higher-priced membership tiers.

39. Will Crush is the middle tier and costs $22.99 per month (plus the $59.99 Annual Membership Fee and monthly $2.99 Processing Fee). EoS promises that "Will Crush" memberships provide access to "our 150+ gym locations, our G-Fit Classes, MOVEōS Cinema, Indoor Pool, Sauna, and so much more." EoS tells consumers that if

they sign up for the Will Crush membership, they will get access to all the benefits of a Will Do membership, plus the following perks that Will Do members cannot access:

- Access to all EoS locations except for certain "LUX" locations;
- MOVEōS Cinema (watch a big screen movie while you workout!);
- Swimming Pool and Hot Tub;
- Group Fitness Classes;
-  Yoga Classes;
- Cycle Classes;
-  Basketball Court; and
- Saunas.

40.    Will Power is the most expensive tier and costs $29.99 per month (plus the $59.99 Annual Membership Fee and monthly $2.99 Processing Fee). EoS describes this membership as follows: "If you demand nothing but the best, match your drive with our Will Power Membership that has it all. Unlimited access and unlimited perks for an unstoppable you."

41.    EoS claims that consumers who sign up for the Will Power membership will get access to all the benefits of a Will Crush membership, plus the following perks that Will Crush and Will Do members cannot access:

- Unlimited Virtual Les Mills Classes;
- E7 Personalized Nutrition Program;
- 1 E-Volt Total Body Scan Nutritional Profile Progress check per month;
- EoS Smart Strength Equipment;
- Recovery Massage Chairs;
- CryoLounge: Heat Cold Therapy;

- The Tank: Hyperice Compression & Wellness Therapy;

- Flex Deals (access to ALL exclusive discounts and offers);

- Unlimited VIP Guest Privileges.

42.    EoS solicits customers to choose the "Will Power" membership by labeling it as the "BEST VALUE" and by displaying the perks exclusive to the Will Power members first, then those exclusive to Will Power and Will Crush members, followed at the very end by the limited services available to the basic Will Do membership.

11

| | **BEST VALUE** WILL POWER | WILL CRUSH | WILL DO |
|---|---|---|---|
| | JOIN IN | JOIN IN | JOIN IN |
| **GYM ACCESS** | 175+ LOCATIONS OPEN OR ON THE WAY | 175+ LOCATIONS OPEN OR ON THE WAY | SINGLE LOCATION |
| Unlimited VIP Guest Privileges (all guests must be 18+ & accompanied by the E0S Member at all times) | ✓ | | |
| Flex Deals (access to ALL exclusive discounts and offers) | ✓ | | |
| The Tank: Hyperice Compression & Wellness Therapy | ✓ | | |
| CryoLounge: Heat Cold Therapy | ✓ | | |
| Recovery Massage Chairs | ✓ | | |
| E0S Smart Strength Equipment | ✓ | | |
| 1 E-Volt Total Body Scan Nutritional Profile Progress check per Month | ✓ | | |
| E7 Personalized Nutrition Program | ✓ | | |
| Unlimited Virtual Les Mills Classes | ✓ | | |
| Access to all E0S Locations* | ✓ | ✓ | |
| Saunas | ✓ | ✓ | |
| Basketball Court | ✓ | ✓ | |
| Cycle Classes | ✓ | ✓ | |
| Yoga Classes | ✓ | ✓ | |
| Group Fitness Classes | ✓ | ✓ | |
| Swimming Pool and Hot Tub | ✓ | ✓ | |
| MOVE0S Cinema (watch a big screen movie while you workout!) | ✓ | ✓ | |
| Complimentary Personal Training Session | ✓ | ✓ | ✓ |
| Access to Cardio & Strength Equipment | ✓ | ✓ | ✓ |
| Open 24 Hours a Day | ✓ | ✓ | ✓ |
| Month-to-Month | ✓ | ✓ | ✓ |
| | **LEARN MORE** | | |

Annual Membership Fee of $59.99 applies. Amenities vary by location and Membership type.
*Excluding LUX locations
**Excluding LUX locations and most E0S Fitness locations

43.    Based on the plain language descriptions and the clear chart on EoS's website, a reasonable consumer would believe EoS's representations that the Will Crush and Will Power memberships offer access to amenities that are not available to Will Do members. A reasonable consumer would further understand that when they pay the higher price for Will Crush and Will Power memberships, they are paying a premium to gain access to amenities that they would not have access to with a Will Do membership. Reasonable consumers would not pay for a higher-priced membership tier if they could access all the same amenities for a lower price with one of the lower membership tiers.

44.    But that is exactly what happens in practice. Because EoS does not enforce restrictions on access to premium equipment and amenities, EoS members can access the same equipment and amenities regardless of which tier they signed up for. Thus, EoS's representation that the more expensive tiers offer more and better benefits than the less expensive tiers are false, and the increased fees that members pay for higher-tier memberships offer no additional benefits beyond the base membership price.

45.    The Will Crush and Will Power membership tiers are just a cash grab by EoS and do not actually correspond to increased benefits, since the same benefits are available to members who only pay for Will Do memberships.

46.    Those, like Plaintiff, who paid extra to have exclusive access to certain equipment and amenities are paying a worthless premium on their membership price

**E.    Plaintiff Kazmucha's Experience**

47.    On February 17, 2024, Plaintiff signed a contract[15] to become a "Black" tier member at the Queen Creek location in Arizona. This membership tier is what is now

---

[15] Plaintiff originally joined EoS with a mid-tier "Blue" membership on October 30, 2023. Ex. 1. His Black tier membership is attached as Exhibit 2. The Contract states that it is "governed by, construed and enforced under the laws of the State of California[.]"

referred to as "Will Power" which is the highest tier and costs $29.99 a month, plus an Annual Membership Fee.

48.    Plaintiff signed up for the highest tier membership based on EoS's representations that the higher price of the membership was justified by access to amenities and equipment that were not included in the lower tier memberships.

49.    Before signing up for his membership, Plaintiff reviewed advertisements showing the different membership tiers and the benefits corresponding to each tier. Plaintiff saw that the Will Power tier offered access to more equipment and amenities than the Will Crush and Will Do tiers.

50.    Plaintiff signed up using a standard membership agreement on EoS's pre-printed form. The pre-printed form specified that "This Agreement shall be governed by, construed and enforced under the laws of the State of California, excluding the body of law related to choice of laws, and to the extent preempted, by the law of the United States."

51.    But in fact, at Plaintiff's home gym in Queen Creek, AZ, all members with any tier of membership can access the majority of amenities and spaces, including those that were advertised as only available to those with middle or top tier memberships. Contrary to EoS's promises, Plaintiff observed that neither the MOVEōS Cinema, the basketball or sport court, the indoor pool and hot tub, nor the sauna had any type of access control (such as requiring a membership card to be scanned) or EoS staff monitoring the amenities to ensure they were only being accessed or used by Will Power or Will Crush members.

14

52.     Plaintiff also observed that anyone could use the eGym Smart Machines, which supposedly were only available to Will Power members. All that was required was to sign in with an EoS account or to use a Guest account.

53.     Although Plaintiff had to swipe his membership card to access the Hyperice Recovery Room, anyone who gained access to the room could use the recovery boots or massage guns. EoS does not monitor the room to ensure that only members who pay for a Will Power membership have access to this benefit.

54.     These amenities were not only identified in the comparison chart as exclusive to these membership tiers, but also specifically enumerated in the description of the Will Crush tier as being a benefit above the Will Do tier.

55.     As a result, contrary to EoS's promises, Plaintiff was not receiving the promised additional benefits in exchange for his higher membership price. Plaintiff could have purchased a $9.99 per month membership and still accessed most of the very same amenities that EoS had told him he needed to pay $29.99 per month to access.

56.    For example, this photograph, taken by Plaintiff at the Queen Creek location, demonstrates that anyone can walk into the MOVEōS Cinema as there is no requirement to scan a membership card or no monitoring staff—the only indication that access to the MOVEōS Cinema is exclusive is a sign describing it as an amenity:



57.    In the Queen Creek location, the few perks that do have access controls were among the small number of perks limited to Will Power members such as the Recovery Massage Chairs and CryoLounge, but were nonetheless routinely in a state of disrepair so that Plaintiff did not have access to them as EoS promised.

58.    Plaintiff decided to visit other nearby locations to see if they provided the promised level of exclusivity for the premium amenities.

59.    He has visited the Gilbert, AZ EoS location and the Mesa, AZ EoS location. At both other locations, Plaintiff saw that amenities that EoS told consumers required a Will Crush or Will Power membership to access were freely accessible to members with all tiers of membership.

60.    When Plaintiff selected and paid for EoS's most expensive membership option, based on EoS's representations about its membership tiers, he reasonably expected that he was required to pay for the $29.99 Will Power membership to access amenities that were listed as only available to Will Power members. Based on EoS's representations, he reasonably believed that Will Power membership amenities would not be available to him if he paid the basic Will Do price of $9.99 a month.

61.    In fact, the inflated $29.99 Will Power membership does not provide additional benefits above the Will Do membership because EoS does not enforce restrictions on access to amenities. As a result, the membership tiers are illusory and serve only to enrich EoS while offering no commensurate benefit to Plaintiff.

62.    And, while EoS holds out its Will Power and Will Crush membership tiers as providing exclusive access to restricted areas or equipment, the reality is that such access is not exclusive to those who pay to access it, and the restricted equipment is often in a state of disrepair.

63.    EoS has the ability to restrict access to the premium spaces and keep the equipment in repair, but chooses not to because it would require it to spend more money on staffing costs, costs to program membership card scanners for access to those spaces, and/or repair technician costs.

64.    This denies Plaintiff and putative class members of the benefit of their bargains.

65.    Had Plaintiff known that he could have accessed amenities such as the Cinema Room on the base membership tier, he would not have paid a premium for exclusive access to those amenities.

66.    EoS deceives consumers like Plaintiff by holding out "premium" membership tiers that do not actually offer benefits above the lowest membership tiers, and while failing to deliver the promised exclusivity of those features. Plaintiff and consumers are paying extra monthly fees for no additional benefit.

67.    These harms borne by consumers across the country will only increase as EoS continues its plans of exponential expansion.

## CLASS ACTION ALLEGATIONS

68.    Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), as applicable, and (c)(4), Plaintiff seeks certification of the following nationwide class (the "Class" or the "Nationwide Class"):

**All persons in the United States who entered into a contract for membership at an EoS gym at any tier above the base package.**

69.    Excluded from the Nationwide Class are EoS, any entity in which EoS has a controlling interest, and EoS's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Nationwide Class are any judicial officer

18

presiding over this matter, members of their immediate family, and members of their judicial staff.

70.     Plaintiff hereby reserves the right to amend or modify the class definitions with greater specificity or division after having had an opportunity to conduct discovery.

71.     The proposed Nationwide Class meets the criteria for certification under Rule 23(a), (b)(2), (b)(3) and (c)(4).

72.     **Numerosity. Fed. R. Civ. P. 23(a)(1).** Consistent with Rule 23(a)(1), the members of the Nationwide Class are so numerous and geographically dispersed that the joinder of all members is impractical. While the exact number of class members is unknown to Plaintiff at this time, those persons' names and addresses are available from EoS's records, and class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include electronic mail, U.S. Mail, internet notice, and/or published notice.

73.     **Predominance of Common Issues**. Fed. R. Civ. P. 23(a)(2) and (b)(3). Consistent with Rule 23(a)(2) and with 23(b)(3)'s predominance requirement, this action involves common questions of law and fact that predominate over any questions affecting individual class members. The common questions include:

      a.      Whether EoS has an implied contractual obligation to ensure that the premium amenities and spaces were in fact exclusive and functioning;

      b.      Whether California law applies to the Class Members' claims;

      c.      Whether EoS was unjustly enriched by charging Will Power and Will Crush members a premium for accessing amenities that were not actually restricted from the Will Do tier;

19

1

      d.    Whether EoS should retain the money paid by Plaintiff and class

2                 members to access what they believed to be premium features;

3      e.    Whether, as a result of EoS's conduct, Plaintiff and class members

4                 are entitled to injunctive, equitable, declaratory and/or other relief,

5                 and, if so, the nature of such relief.

6      74.    **Typicality. Fed. R. Civ. P. 23(a)(3).** As to the Nationwide Class, Plaintiff's

7 claims are typical of other class members' claims because Plaintiff and class members

8 were subjected to the same allegedly unlawful conduct and damaged in the same way.

9      75.    **Adequacy. Fed. R. Civ. P. 23(a)(4).** Consistent with Rule 23(a)(4), Plaintiff

10 is an adequate representative of the Class because Plaintiff is a member of the Class and

11 is committed to pursuing this matter against EoS to obtain relief for the Class. Plaintiff has

12 no conflicts of interest with the Class. Plaintiff's Lead Counsel are competent and

13 experienced in litigating class actions, including extensive experience in consumer

14 protection claims. Plaintiff intends to vigorously prosecute this case and will fairly and

15 adequately protect the interests of all of the Class.

16      76.    **Superiority. Fed. R. Civ. P. 23(b)(3).** Consistent with Rule 23(b)(3), a class

17 action is superior to any other available means for the fair and efficient adjudication of

18 this controversy, and no unusual difficulties are likely to be encountered in the

19 management of this class action. The purpose of the class action mechanism is to permit

20 litigation against wrongdoers even when damages to Plaintiff and class members may not

21 be sufficient to justify individual litigation. Here, the damages suffered by Plaintiff and

22 the class members are relatively small compared to the burden and expense required to

23 individually litigate their claims against EoS, and thus, individual litigation to redress

24 EoS's wrongful conduct would be impracticable. Individual litigation by each class

member would also strain the court system. Individual litigation creates the potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

77. **Injunctive and Declaratory Relief.** Class certification is also appropriate under Rule 23(b)(2) and (c). EoS, through its uniform conduct, acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the Class as a whole.

78. Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.

79. Finally, all members of the proposed Class are readily ascertainable. EoS has access to information regarding which individuals paid for tiers above the basic level. Using this information, the members of the Class can be identified, and their contact information ascertained for purposes of providing notice to the Class.

## COUNT 1 – UNJUST ENRICHMENT UNDER CALIFORNIA LAW

### On Behalf of Plaintiff and the Nationwide Class against all Defendants

80. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 79 above.

81. California law applies to the claims of the Nationwide Class pursuant to EoS's standard membership agreements.

82. Plaintiff and the Class Members conferred a benefit on EoS by paying for membership tiers above the base membership tier.

83. ***Illusory Membership Tier.*** When Plaintiff and the Class Members signed up and paid for membership tiers above the base membership tier, they reasonably believed based on EoS's marketing that they were paying for access to equipment and amenities that they could not access if they paid only for lower membership tiers. But because EoS does not enforce restrictions on access to equipment and amenities, all members had access to the same equipment and amenities within each gym location regardless of membership tier. EoS therefore received the benefit of membership fees that exceeded the base membership tiers without offering access to equipment and amenities that exceeded what was available to the base membership tiers. EoS retained the benefits that Plaintiff and the Class Members conferred, but under the circumstances, it would be unjust for EoS to continue to retain these benefits.

84. ***Lack of Exclusivity.*** Plaintiff and the Class Members also paid for access to equipment and amenities that was exclusive, but did not receive exclusive access. Instead, they had to share equipment and amenities with members who had paid for the base membership tier. As a result, the equipment and amenities were more crowded than they would have been otherwise, were used more frequently than they would have been otherwise, and degraded more quickly than they would have otherwise. In this way, Plaintiff and the Class Members also conferred benefits on EoS that exceeded the value they received. EoS retained the benefits that Plaintiff and the Class Members conferred, but under the circumstances, it would be unjust for EoS to continue to retain these benefits.

85. EoS has been unjustly enriched at the expense of Plaintiff and the Class Members.

86.    Plaintiff seeks an order requiring EoS to make restitution to him and the other Class Members.

## COUNT 2 – BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING UNDER CALIFORNIA LAW

*In the Alternative* – **On behalf of Plaintiff and the Nationwide Class against all Defendants**

87.    Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 79 above.

88.    Plaintiff brings this claim in the alternative to the Unjust Enrichment claim in Count 1 above.

89.    California law applies to the claims of the Nationwide Class pursuant to EoS's standard membership agreements.

90.    California law implies in every contract a covenant of good faith and fair dealing, unless the contract expressly states otherwise. The covenant of good faith and fair dealing aims to effectuate the contract's purposes and promises, and to protect the parties' legitimate expectations based upon the terms of the contract. The covenant of good faith and fair dealing requires parties to do things reasonably required by the contract to accomplish its goals, and to refrain from acts that would injure or destroy the other party's right to receive the fruits of the contract.

91.    The obligation of good faith and fair dealing is violated as relates to contract performance where a party exercises discretion reserved to it solely in its favor and contrary to the benefit of the other party, exercise discretion dishonestly or with ill motive, or otherwise exercises discretion in bad faith. Doing so exploits discretion to a party's benefit, particularly when the party exercising discretion drafted the contract and exercises it to the detriment of a less sophisticated counterparty.

23

92.     Defendants are the only parties that can enforce restrictions on access to equipment and amenities in its own gyms, according to the membership tiers that they advertise to consumers. Consumers have no way to consistently monitor access to EoS's equipment and amenities to ensure that they are reserved to members who purchased the corresponding membership tiers.

93.     ***Illusory Membership Tiers.*** Defendants violated the covenant of good faith and fair dealing when they charged Plaintiff and the Class Members higher prices for membership tiers based on the promise that the higher-priced memberships offered access to more equipment and amenities, and then failed to enforce restrictions on equipment and amenities according to membership tier such that Plaintiff and the Class Members did not receive access to equipment and amenities above what they could have obtained at a lower-priced membership.

94.     For example, at Plaintiff's home gym, all members with any tier of membership can access all of the amenities and spaces, including those that were advertised as only available to those with middle or top tier memberships. As a result, contrary to EoS's promises, Plaintiff did not receive any additional benefits in exchange for his higher membership price. Plaintiff could have purchased a $9.99 per month membership and still accessed the very same amenities that EoS had told him he needed to pay $29.99 per month to access.

95.     Defendants exercised their discretion to restrict (or not restrict) access to equipment and amenities in a way that deprived Plaintiff and the Class Members of benefits above what they could have accessed for the lowest-price base-tier membership. This deprived Plaintiff and the Class Members of the benefit of their bargain.

96.    ***Lack of Exclusivity.*** EoS also violated the covenant of good faith and fair dealing when it charged Plaintiff and the Class Members higher prices for membership tiers that it implied came with exclusive access to equipment and amenities, but then allowed all members to access the equipment and amenities that were supposed to be exclusive.

97.    For example, at Plaintiff's home gym, all members with any tier of membership can access all of the amenities and spaces, including those that were advertised as only available to those with middle or top tier memberships. As a result, contrary to EoS's promises, Plaintiff did not receive exclusive access to amenities and spaces that were advertised as only available to those with middle or top tier memberships. Because more members than just the Class Members had access to these equipment and amenities, the equipment and amenities were more crowded than they would have been otherwise, were used more frequently than they would have been otherwise, and degraded more quickly than they would have otherwise.

98.    EoS exercised its discretion to restrict (or not restrict) access to equipment and amenities in a way that deprived Plaintiff and the Class Members of exclusive access to spaces with fewer other gym members. This deprived Plaintiff and the Class Members of the benefit of their bargain.

99.    Plaintiff and the Class Members have performed all, or substantially all, of the obligations imposed on them in EoS's membership agreements. As a direct and proximate result of EoS's breach of the covenant of good faith and fair dealing, Plaintiff and the Class Members suffered actual harm in the form of the difference between the base membership price and the premium membership prices that they paid EoS.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of himself and all others similarly situated, respectfully requests that this Court:

a.     Determine that the claims alleged herein may be maintained as a class action under Federal Rule of Civil Procedure 23, and issue an order certifying one or more Class as defined above;

b.     Appoint all Plaintiffs as representatives of the Nationwide Class;

c.     Appoint all Plaintiffs' counsel whose appearance is noticed herein as Class Counsel;

d.     Award all actual, general, special, incidental, statutory, punitive, exemplary, and consequential damages and restitution to which Plaintiffs and Class Members are entitled in an amount to be determined at trial and require EoS to disgorge its ill-gotten gains;

e.     Award pre-judgment and post-judgment interest on such monetary relief at the highest legal rate to the extent provided by law;

f.     Grant appropriate injunctive and/or declaratory relief;

g.     Award reasonable attorneys' fees and costs to the extent provided by law; and

h.     Grant such further relief that this Court deems appropriate.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED this 1st day of May 2025.

**HAGENS BERMAN SOBOL SHAPIRO LLP**


By  s/ Leonard W. Aragon
    Leonard W. Aragon (020977)
    E. Tory Beardsley (031926)
    11 West Jefferson Street, Suite 1000
    Phoenix, Arizona 85003
    Telephone: (602) 840-5900
    leonard@hbsslaw.com
    toryb@hbsslaw.com

    Katherine M. Aizpuru*
    Gemma Seidita*
    David Lawler*
    **TYCKO & ZAVAREEI LLP**
    2000 Pennsylvania Ave. NW
    Suite 1010
    Washington, D.C. 20006
    Tel. 202-973-0900
    Fax: 202-973-0950
    kaizpuru@tzlegal.com
    gseidita@tzlegal.com
    dlawler@tzlegal.com

    *Attorneys for Plaintiff*

    *\*Pro hac vice applications forthcoming*