**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jeffrey Kazmucha, | No. CV-25-01485-PHX-KML |
| Plaintiff, | **ORDER** |
| v. | |
| Fitness Alliance LLC, et al., | |
| Defendants. | |

Plaintiff Jeffrey Kazmucha filed this putative class action suit against EoS Fitness OPCO Holdings, LLC and its parent company Fitness Alliance LLC alleging certain EoS Fitness amenities were meant to be exclusive to members of the highest membership tiers, but EoS failed to ensure exclusivity. Kazmucha alleges EoS has been unjustly enriched by the membership fees of those paying for higher-tier memberships and has breached the covenant of good faith and fair dealing. The motion to dismiss is granted with leave to amend.

**I.     Background**

EoS Fitness offers three membership tiers for its gyms: Will Do, Will Crush, and Will Power. (Doc. 1 at 8.) Will Do is the lowest tier and provides access to a single EoS Fitness location. (Doc. 1 at 9.) Will Crush is the middle tier and provides additional benefits such as access to all EoS Fitness locations and amenities like a sauna, basketball court, pool, workout cinema, and group fitness classes. (Doc. 18 at 3.) Will Power, the highest

1   tier, offers the same benefits as the Will Crush tier, plus additional perks like unlimited
2   guest privileges, massage chairs, smart strength equipment, and personal nutrition
3   programs. (Doc. 11 at 10–11.)
4       On October 30, 2023, Kazmucha signed up for the middle membership tier, which
5   is now called Will Crush.[1] (Doc. 1-1 at 2.) After more than three months of Will Crush
6   membership, Kazmucha upgraded to the Will Power tier in February 2024. (Doc. 1-2 at 2.)
7   He alleges he "chose to forgo . . . cheaper membership options" because he wanted access
8   to "exclusive amenities." (Doc. 22 at 5.) Kazmucha states he based his decision on an
9   advertisement showing the benefits offered for each membership type. (Doc. 1 at 14.) The
10  parties appear to agree the advertisement sets forth the privileges of the various
11  membership tiers that were in place at the time Kazmucha upgraded his membership.

---

[1] When Kazmucha signed his membership contracts, the names of the membership tiers were different. The "Will Crush" tier used to be called "Blue" and the "Will Power" tier was called "Black." The parties agree this change does not have any impact on this case.

The advertisement at issue depicts the following:

| GYM ACCESS | WILL POWER (BEST VALUE)<br>175+ LOCATIONS OPEN OR ON THE WAY | WILL CRUSH<br>175+ LOCATIONS OPEN OR ON THE WAY | WILL DO<br>SINGLE LOCATION |
|---|:---:|:---:|:---:|
| Unlimited VIP Guest Privileges (all guests must be 18+ & accompanied by the EōS Member at all times) | ✓ | | |
| Flex Deals (access to ALL exclusive discounts and offers) | ✓ | | |
| The Tank: Hyperice Compression & Wellness Therapy | ✓ | | |
| CryoLounge: Heat Cold Therapy | ✓ | | |
| Recovery Massage Chairs | ✓ | | |
| EōS Smart Strength Equipment | ✓ | | |
| 1 E-Volt Total Body Scan Nutritional Profile Progress check per Month | ✓ | | |
| E7 Personalized Nutrition Program | ✓ | | |
| Unlimited Virtual Les Mills Classes | ✓ | | |
| Access to all EōS Locations* | ✓ | ✓ | |
| Saunas | ✓ | ✓ | |
| Basketball Court | ✓ | ✓ | |
| Cycle Classes | ✓ | ✓ | |
| Yoga Classes | ✓ | ✓ | |
| Group Fitness Classes | ✓ | ✓ | |
| Swimming Pool and Hot Tub | ✓ | ✓ | |
| MOVEōS Cinema (watch a big screen movie while you workout!) | ✓ | ✓ | |
| Complimentary Personal Training Session | ✓ | ✓ | ✓ |
| Access to Cardio & Strength Equipment | ✓ | ✓ | ✓ |
| Open 24 Hours a Day | ✓ | ✓ | ✓ |
| Month-to-Month | ✓ | ✓ | ✓ |

LEARN MORE

Annual Membership Fee of $59.99 applies. Amenities vary by location and Membership type.
*Excluding LUX locations
**Excluding LUX locations and most EōS Fitness locations

Kazmucha mainly used the EoS Fitness gym in Queen Creek, Arizona. (*See* Doc. 1 at 14.) Consistent with the advertisement, the Queen Creek facility displays signage indicating certain spaces are only for Will Crush and Will Power members (Doc. 1 at 16), and some premium amenities and spaces require card scans for entry (Doc. 1 at 15). But Kazmucha claims many of the allegedly-exclusive amenities like the EoS cinema, basketball court, pool, and sauna do *not* have card scanners or staff monitoring them. (Doc. 1 at 14–15.) Kazmucha alleges the non-exclusivity led to the equipment and amenities being more crowded than they would have been otherwise and degrading more quickly. (Doc. 1 at 17.) Kazmucha claims he would not have paid for a higher membership tier had he known he could have entered the premium spaces with the base membership. (Doc. 1 at 18.) He also alleges two perks that did have access controls—the Recovery Massage Chairs and CryoLounge—were routinely in a "state of disrepair." (Doc. 1 at 17.)

Ultimately, Kazmucha believes the membership tiers are illusory. Although he pays for the higher tier and is entitled to use the amenities he wishes, he alleges EoS has been unjustly enriched and has breached the covenant of good faith and fair dealing by not excluding lower-tier members from those amenities. (Doc. 1 at 17, 22–23.) The EoS parties (collectively "EoS") moved to dismiss. (Docs. 18, 22, 23.)

**II.    Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (internal citations omitted)). This is not a "probability requirement," but a requirement that the factual allegations show "more than a sheer possibility that a defendant has acted unlawfully." *Id*. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

### III. Analysis

The parties do not dispute the membership contract contains a choice-of-law provision selecting California law. (Docs. 1 at 14, 23; 1-1 at 5; 1-2 at 4; 18 at 4.) Because Kazmucha's claims arise out of his EoS membership, they must therefore be analyzed under California law. *Swanson v. Image Bank, Inc.*, 77 P.3d 439, 441 (Ariz. 2003); *Nanini v. Nanini*, 802 P.2d 438, 441 (Ariz. Ct. App. 1990) ("When the parties choose the law of a particular state to govern their contractual relationship and the chosen law has some nexus with the parties or the contract, that law will generally be applied.").

#### a. Unjust enrichment

Kazmucha alleges a standalone unjust enrichment claim under California law based on EoS retaining the higher fees of middle- and upper-tier members without ensuring them exclusive access to certain advertised amenities. (Docs. 1 at 22; 22 at 11.) EoS moves to dismiss because California law does not recognize unjust enrichment as an independent cause of action where an express contract governs the subject matter of the dispute. (Docs. 18 at 4–5; 23 at 2–3.)

California does not recognize unjust enrichment as an independent cause of action, but in certain circumstances construes such claims as quasi-contract requests for restitution. *Sepanossian v. Nat'l Ready Mixed Concrete Co.*, 315 Cal. Rptr. 3d 373, 385–86 (2023). Unjust enrichment is generally unavailable when the parties have an enforceable express contract. *Id.* at 385. It may be permitted only where a plaintiff alleges the contract was procured by fraud or duress, is otherwise non-existent or unenforceable, or where the defendant obtained a benefit through fraud, conversion, or other similar conduct. *Id.* at 385–86.

Here, there is no dispute an enforceable contract exists: Kazmucha attached his membership contracts to his complaint. (Docs. 1-1; 1-2.) But he does not allege those contracts were procured by fraud, duress, or other deceitful means. Although Kazmucha is correct that he may plead in the alternative, here he does not allege the necessary facts for an unjust enrichment claim (*i.e.*, circumstances making the contract unenforceable). The

cases Kazmucha cites prove this very point, because they involved allegations of fraud, deception, or the absence of a valid contract. *See, e.g., Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (allowing alternative pleading of unjust enrichment where validity and scope of parties' contract was in dispute); *see also Richards v. Centripetal Networks, Inc.*, 709 F. Supp. 3d 914, 925–26 (N.D. Cal. 2024) (permitting unjust enrichment claim alongside contract claims because plaintiffs alleged fraudulent inducement).

Rule 8(d)(2) allows inconsistent or alternative pleading, but it does not override the substantive rule that restitution is unavailable where an enforceable contract governs the subject matter. *Klein v. Chevron U.S.A., Inc.*, 137 Cal. Rptr. 3d 293, 331–32 (2012). Because Kazmucha's claims arise from the contract itself and there are no allegations of fraud or unenforceability, his remedy lies in contract law, not restitution. *See Sepanossian*, 315 Cal. Rptr. 3d at 385–86. The unjust enrichment claim is dismissed.

### b. Covenant of good faith and fair dealing

Kazmucha's other claim is for breach of the covenant of good faith and fair dealing. That claim also fails.

Under California law, "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Carma Developers (Cal.) Inc. v. Marathon Development Cal., Inc.*, 826 P.2d 710, 726 (1992) (citing Restatement (Second) of Contracts § 205). The covenant requires that neither party unfairly interfere with the other's right to receive the benefits of the agreement. *Avidity Partners, LLC v. State of Cal.*, 165 Cal. Rptr. 3d 299, 320 (2013). This duty is most often applied when a party is given discretion under a contract and uses that discretion in a way that deprives the other party of the benefit of its bargain. *Carma Developers*, 826 P.2d at 726–27. But the covenant cannot create obligations that are inconsistent with the express terms of the contract or that go beyond the parties' actual agreement. *Guz v. Bechtel Nat'l, Inc.*, 8 P.3d 1089, 1110 (2000) ("[the covenant] exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the *benefits of the agreement actually*

*made*"). Additionally, the covenant cannot be used to prohibit conduct expressly permitted by the contract or to impose duties for which the parties did not bargain. *Carma Developers*, 826 P.2d at 728. Although a party alleging a breach of the covenant need not tie the breach to an express contractual term, it must be linked to the existence of "some specific contractual obligation." *Avidity Partners*, 165 Cal. Rptr. 3d at 320; *see also In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 802 (N.D. Cal. 2019).

Here, Kazmucha's contract clearly reserved EoS's right to make "reasonable changes to the type of . . . equipment offered." (Doc. 1-2 at 4.) It also points to EoS's website for overarching policies and procedures (Doc. 1-2 at 4), but the specific webpage cited does not include the membership tier chart on which Kazmucha relies. *See Privacy Policy*, EoS Fitness, https://eosfitness.com/overarching-policies/ [https://perma.cc/Z62S-MQXB] (last visited Oct. 15, 2025). Even if the membership tier chart could be incorporated into the contract—and Kazmucha nowhere explains how it could—the chart does not describe how access will be enforced or policed. Most notably, neither the contract nor the EoS website contain any express provisions guaranteeing exclusivity.

Kazmucha alleges EoS breached the covenant by failing to enforce exclusivity in its facilities, but his membership agreement promised access to benefits (*e.g.*, unlimited guest privileges and ability to visit any EoS location) and amenities (*e.g.*, a basketball court, saunas, smart strength equipment, a swimming pool, and a cinema) that he apparently received. He has not identified the provisions or purposes of the agreement that guaranteed exclusivity or obligated EoS to police lower-tier members. Reading such obligations into the contract, particularly where Kazmucha has not identified any provision giving rise to them, would improperly expand the bargain beyond the parties' actual agreement. *Carma Developers*, 826 P.2d at 728; *Guz*, 8 P.3d at 1110.

If Kazmucha had alleged he did not receive access to the facilities or benefits explicitly promised in the contract or listed on the EoS website, the analysis might be different. *See* Cal. Civ. Code § 1812.85(c) (reserving consumer right to cancel contract and

- 7 -

receive pro rata refund when scope of promised facilities is eliminated or substantially reduced). But just as a moviegoer has no claim when a few movie-hoppers sneak into the theater, Kazmucha cannot claim a breach of the covenant of good faith and fair dealing when he continued to enjoy access to Will Power amenities (even if EoS did not rigorously ensure lower-tier members were excluded). The breach of covenant claim is dismissed.

Because Kazmucha may be able to cure the deficiencies identified above, his complaint is dismissed with leave to amend. Fed. R. Civ. P. 15(a)(2) (leave to amend should be freely given).

Accordingly,

**IT IS ORDERED** the Motion to Dismiss (Doc. 18) is **GRANTED**. The complaint is **DISMISSED WITH LEAVE TO AMEND**.

**IT IS FURTHER ORDERED** if plaintiff wishes to file an amended complaint, he must do so no later than **October 30, 2025**. The Clerk of Court is directed to enter a judgment of dismissal with prejudice if no amended complaint is filed by that date.

Dated this 15th day of October, 2025.

Honorable Krissa M. Lanham
United States District Judge