**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jeffrey Kazmucha, | No. CV-25-01485-PHX-KML |
| Plaintiff, | **ORDER** |
| v. | |
| Fitness Alliance, LLC, et al., | |
| Defendants. | |

Plaintiff Jeffrey Kazmucha filed this putative class action suit against EoS Fitness OPCO Holdings, LLC and its parent company Fitness Alliance, LLC (collectively "EoS"), alleging EoS breached its membership contract by failing to restrict premium amenities to premium-tier members. The court dismissed Kazmucha's prior complaint. He has amended but continues to state no plausible claim. The motion to dismiss is granted, this time without leave to amend.

I.      **Background**[1]

EoS offers three membership tiers: Will Do (base tier), Will Crush (middle tier), and Will Power (highest tier). (Doc. 30 at 9–11.) Will Do provides access to a single EoS location. (Doc. 30 at 9.) Will Crush includes access to all EoS locations and additional amenities such as the exercise cinema, pool, sauna, basketball court, and group fitness classes. (Doc. 30 at 10.) Will Power includes Will Crush benefits plus perks like unlimited

---

[1] The October 2025 order (Doc. 24) dismissing the original complaint also provides extensive background.

guest privileges, massage chairs, smart strength equipment, and nutrition-related programs. (Doc. 30 at 10–11.)

Kazmucha originally signed up for a Will Crush membership[2] in October 2023 and upgraded to a Will Power membership in February 2024. (Doc. 30 at 14.) He alleges he chose the higher-priced membership because EoS represented that the premium tiers provided access to amenities and equipment unavailable to lower-tier members. (Doc. 30 at 14.) Before upgrading, he reviewed an advertisement chart describing the benefits associated with each membership tier. (Doc. 30 at 12, 14; *see also* Doc. 24 at 3 (containing that chart).)

Kazmucha primarily used the EoS location in Queen Creek, Arizona. (Doc. 30 at 14–15.) He alleges that despite EoS's representations, all members could access most of the premium amenities. According to Kazmucha, the cinema, basketball court, pool, and sauna had no card-scan requirement and no staff monitoring to restrict use by membership tier, although signage identified (at least) the cinema as a Will Crush and Will Power amenity. (Doc. 30 at 15–17.) Kazmucha also alleges anyone could use the smart strength equipment by signing in with an EoS or guest account, and that although access to the Hyperice Recovery Room required a card swipe, anyone who entered could use the recovery equipment because EoS did not monitor the room. (Doc. 30 at 15.)

Kazmucha alleges the lack of meaningful access controls led not only to a lack of exclusivity, but also a lack of access. He claims lower-tier members overcrowded premium spaces, preventing him from using amenities such as the sauna, massage room, and recovery room. (Doc. 30 at 18.) He also alleges premium amenities such as the hot tub, massage chairs, and recovery room were repeatedly unavailable because overuse by non-premium users caused them to break down. (Doc. 30 at 18.) And he alleges he observed members swiping others into supposedly restricted spaces. (Doc. 30 at 18.) He later visited

---

[2] When Kazmucha signed his membership agreements, the tiers had different names. "Will Crush" used to be "Blue" and "Will Power" was called "Black." The parties agree this name change has no impact on the case.

two other EoS locations and allegedly observed the same activity. (Doc. 30 at 19.)

Kazmucha's amended complaint asserts a single claim styled as "breach of contract" but focusing on a breach of the covenant of good faith and fair dealing. (Doc. 30 at 24.) The claim is premised on theories of illusory tiering, lack of exclusivity, and lack of access caused by overcrowding and overuse. (Doc. 30 at 24–28.) He also includes an assertion that the membership agreement is unconscionable because it purportedly allows EoS to alter premium amenities without notice. (Doc. 30 at 20.) EoS moves to dismiss. (Doc. 31.)

## II.    Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (simplified). This is not a "probability requirement," but a requirement that the factual allegations show "more than a sheer possibility that a defendant has acted unlawfully." *Id*. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

## III.    Analysis

The court dismissed Kazmucha's previous unjust-enrichment and breach-of-covenant claims because he failed to identify any provision of the agreement that impliedly or expressly guaranteed exclusivity or required EoS to police lower-tier members. (Doc. 24 at 7.) Kazmucha failed to do so in repleading, so has once again failed to state a claim.

### A. Covenant of Good Faith and Fair Dealing

Although Kazmucha styles his claim as one for breach of contract, in substance it repleads a claim for breach of the implied covenant of good faith and fair dealing.[3] *See Habitat Tr. for Wildlife, Inc. v. City of Rancho Cucamonga*, 96 Cal. Rptr. 3d 813, 850 (Cal.

---

[3] Because Kazmucha's claim arises out of his EoS membership and the membership agreement contains a choice-of-law provision selecting California law (Doc. 30-2 at 4), the claim must be analyzed under California law. *Swanson v. Image Bank, Inc.*, 77 P.3d 439, 441 (Ariz. 2003).

Ct. App. 2009). Under California law, every contract imposes a duty of good faith and fair dealing in its performance and enforcement. *Carma Developers (Cal.) Inc. v. Marathon Development Cal., Inc.*, 826 P.2d 710, 726 (Cal. 1992). The covenant bars a party from exercising contractual discretion in a way that unfairly frustrates the other party's right to receive the benefits of their bargain. *Id.* at 726–27; *Avidity Partners, LLC v. State of Cal.*, 165 Cal. Rptr. 3d 299, 320 (Cal. Ct. App. 2013). A breach of the contract's express terms is not required—if it were, that would essentially duplicate a breach-of-contract claim— but a breach-of-covenant claim must derive from some identifiable contractual promise that the defendant's conduct allegedly frustrated. *Avidity Partners*, 165 Cal. Rptr. 3d at 320; *see also In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 802 (N.D. Cal. 2019). Breach-of-covenant cannot be used to add new obligations, vary the parties' actual agreement, or forbid conduct the contract expressly allows. *Guz v. Bechtel Nat'l, Inc.*, 8 P.3d 1089, 1110 (Cal. 2000); *Carma Developers*, 826 P.2d at 728.

Kazmucha's original complaint failed because he did not point to any provision of the agreement that guaranteed or implied exclusivity or required EoS to police lower-tier members. (Doc. 24 at 7.) The amended complaint relabels that theory as illusory tiering, lack of exclusivity, and lack of access caused by overcrowding and overuse. (Doc. 30 at 25–28.) None of these labels supplies the contractual hook that was missing the first time.

The membership agreement contains three provisions crucial to evaluating Kazmucha's claim. First, the agreement permits members to use EoS facilities subject to the club's posted rules and regulations, which EoS reserved the right to change in the future without prior notice. (Doc. 30-2 at 2, 4.) Second, it reserves EoS's right to make reasonable changes to the type or quantity of classes or equipment offered. (Doc. 30-2 at 4.) Neither of these provisions promise exclusive access to premium amenities, any particular method of restricting entry, staff monitoring, reduced crowding, or immediate availability whenever a member wants to use a given amenity. Reading into the agreement obligations for EoS to police lower-tier members or guarantee exclusivity would therefore expand the bargain beyond the parties' actual agreement. *Guz*, 8 P.3d at 1110. Declining to read

exclusivity into the contract also would not frustrate Kazmucha's right to receive the benefits of the bargain. To the contrary, such a reading would "prohibit [EoS] from doing that which is expressly permitted by [the] agreement[,]" *Carma Developers*, 826 P.2d at 728, *i.e.*, make "reasonable changes to the type or quantity of classes or equipment offered" (Doc. 30-2 at 4). The court cannot imply a term that would vary the express contractual language. *Id.*

The third important provision states that free weights and cardio equipment are available at all facilities at no extra cost to members. (Doc. 30-2 at 4.) Kazmucha attempts to ground exclusivity in this clause, reading it as guaranteeing by negative implication that all other amenities are available only at extra cost and therefore exclusively for members paying for premium tiers. (Docs. 30 at 27; 34 at 5–6.) This single sentence does not shoulder the weight Kazmucha places on it. *See Guz*, 8 P.3d at 1110. The clause identifies baseline amenities available at every EoS facility without additional charge. It does not address exclusivity at all, obligate EoS to enforce exclusivity, or even correspond to all the benefits available to lowest-tier members under EoS's membership chart. (*See* Doc. 30 at 12 (promising Will Do members access to "strength equipment"—which encompasses more than free weights—and a complimentary personal training session).) And again, implying lower-tier access restrictions from this clause would frustrate EoS's expressly-reserved right to make reasonable changes to the type or quantity of equipment offered. *See Carma Developers*, 826 P.2d at 728.

Having pointed to no contractual provision from which exclusivity could be implied, Kazmucha's breach-of-covenant claim cannot survive under California law. The cases on which he relies are distinguishable for that reason, because each involved a defendant's failure to fully deliver an item the contract promised. *See JCD, Inc. v. Interstate Hotels & Resorts, Inc.*, No. SACV 10-0904 DOC (MLGx), 2010 WL 11596241, at *4 (C.D. Cal. Aug. 3, 2010) (contract promised complimentary access to fitness center but significant renovations to fitness facility meant hotel guests could not use it); *Stonebrae, L.P. v. Toll Bros., Inc.*, No. C-08-0221 EMC, 2010 WL 1460208, at *1, *5

(N.D. Cal. Apr. 8, 2010) (developer's promise to build "18-hole championship golf course, clubhouse, and related facilities" implied construction of facilities within reasonable time).

Nor does the tier chart on which Kazmucha relies contain any provision describing how access will be enforced. At most, the chart—and Kazmucha once again fails to explain how it could be incorporated into the membership agreement—identifies which amenities correspond to which membership tiers. (Doc. 30 at 9–12.) Under California law, incorporation by reference requires a clear and unequivocal reference to the outside document. *Versaci v. Superior Ct.*, 26 Cal. Rptr. 3d 92, 98 (Cal. Ct. App. 2005). Here, the membership agreement contains no clear and unequivocal reference to the tier chart. To the contrary, it states the agreement is the parties' "entire and exclusive Agreement" and "cancels and supersedes prior promises, representations, understandings and/or agreements between the parties." (Doc. 30-2 at 4.) On this record, Kazmucha cannot rely on the tier chart to add an exclusivity or enforcement term the agreement itself does not contain.[4]

Kazmucha's new allegations about overcrowding, overuse, and disrepair do not salvage his claim. (Doc. 30 at 18.) Even accepted as true, those allegations do not plausibly establish a breach of the covenant. Kazmucha's theory is that EoS should have done more to police access to premium spaces. But the covenant restrains a contracting party only from frustrating the other party's right to receive the benefits of the agreement actually made; it cannot impose substantive duties the contract itself does not contain. *Avidity Partners*, 165 Cal. Rptr. 3d at 320; *Guz*, 8 P.3d at 1110. EoS's alleged choice not to devote additional resources to monitoring its facilities does not amount to a breach because the agreement does not require EoS to control other gymgoers in the manner Kazmucha proposes or provide higher-tier members with access to specific spaces or equipment at all.

Kazmucha's own allegations also undercut his overcrowding theory. He alleges he observed members "swiping their badges to get access for the others, or bringing others

---

[4] The tier chart could potentially be relevant if Kazmucha had raised a fraudulent-inducement claim. *See Hinesley v. Oakshade Town Ctr.*, 37 Cal. Rptr. 3d 364, 367 (Cal. Ct. App. 2005). But despite being "the master of the complaint" and represented by competent and experienced counsel, he has not done so across multiple opportunities. The court will not manufacture a cause of action on his behalf.

into supposedly restricted spaces." (Doc. 30 at 18.) But the Will Power tier Kazmucha purchased includes "[u]nlimited VIP Guest Privileges" under which members may bring guests into the facility. (Doc. 30 at 11.) Kazmucha does not plausibly explain how he could know the badge-swipers he observed were not Will Power members exercising the very guest privilege for which he himself paid. *See Iqbal*, 556 U.S. at 678.

In the end, Kazmucha does not allege EoS failed to provide him the premium amenities listed in the tier chart. He instead acknowledges the amenities existed but claims they were sometimes crowded, in disrepair, or occupied by others. That is not the same as alleging EoS withheld an express or implied benefit for which he contracted. Once again, the amended complaint falls short of alleging Kazmucha did not receive access to facilities or benefits the contract expressly or impliedly promised him, so the breach-of-covenant claim is dismissed.

**B. Unconscionability**

Kazmucha may be arguing unconscionability as an independent theory to support his breach-of-covenant claim. (Docs. 30 at 20; 34 at 17–19.) Kazmucha's unconscionability argument misreads the agreement, which only gives EoS discretion to change posted club rules and the type or quantity of classes or equipment offered—not the contract itself. (Doc. 30-2 at 4.) To the contrary, the membership agreement itself makes clear it "may be modified only by an instrument in writing signed by all parties." (Doc. 30-2 at 4.) Simply put, EoS does not have the authority to unilaterally modify the contract, and, even if it did, unilateral modification authority would not necessarily result in an unconscionable contract. *See, e.g.*, *Asmus v. Pac. Bell*, 999 P.2d 71, 79 (Cal. 2000) (unilateral modification authority not inherently invalid and may be enforceable when subject to reasonable limits). Accordingly, Kazmucha's allegations do not establish unconscionability, nor do they cure the failure of the breach-of-covenant claim.

**IV.    Leave to Amend**

The court previously granted Kazmucha leave to amend his claims. Kazmucha has enjoyed ample opportunity to present his claims and has not asked for leave to amend, so

no further leave will be granted. *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1072 (9th Cir. 2008) ("[T]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.") (simplified); *Robinson v. GE Money Bank*, No. 09-CV-00227-AWT, 2014 WL 12693835, at *2 (D. Ariz. Apr. 15, 2014) ("Plaintiffs have already had two opportunities to state a claim, and they need not be granted a third opportunity.").

Accordingly,

**IT IS ORDERED** the Motion to Dismiss (Doc. 31) is **GRANTED**. The Clerk of Court shall enter judgment in favor of defendants and close this case.

Dated this 7th day of May, 2026.

_____
**Honorable Krissa M. Lanham**
**United States District Judge**